UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No.: 2:19-cr-150-SPC-NPM

CRAIG AUSTIN LANG

## **ORDER**

Before the Court is Defendant Craig Austin Lang's Motion for New Trial (Doc. 434) and the Government's response (Doc. 435). For the below reasons, the Court denies the motion.

Lang was charged in a six-count Superseding Indictment for his involvement in a robbery, double murder, and violation of the Neutrality Act. (Doc. 32). The Government's theory was that Lang and his co-Defendant Alex Zwiefelhofer planned to travel to Venezuela to fight in an attempt to overthrow the Venezuelan government. However, because they lacked funds for the trip, they posted several of their firearms online for sale, met the potential buyers—S.L. and D.L.—in an abandoned parking lot, killed them, and stole their money.

Lang eventually made his way to South America, where he took up arms against the Venezuelan government. But this visit was not Lang's first combat experience in a foreign nation. The trial evidence showed that throughout 2015

to 2017, Lang joined the Ukrainian Army and engaged in combat against Russian-backed separatists. He also traveled to Kenya in 2017, attempting to join the Sudan People's Liberation Army in South Sudan to engage in further combat. The jury convicted Lang on all counts. (Doc. 432).

Lang now moves for a new trial under Federal Rule of Criminal Procedure 33. (Doc. 434). Upon a defendant's motion, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Lang points to the following six purported errors as grounds for a new trial: (1) the denial of his motion to sever counts 5 (conspiracy to kill, kidnap, or maim persons in a foreign country) and 6 (violation of the Neutrality Act) from the other four counts; (2) the introduction of evidence under Federal Rule of Evidence 404(b); (3) the denial of cross-examination as to S.L.'s mental health history; (4) the denial of cross-examination on Lang's exculpatory statements; (5) the denial of a jury instruction and related discovery on count 6; and (6) insufficient evidence. Lang fails to show any of these grounds merit a new trial.

**I.   Sever counts 5 and 6**

Lang asserts the Court erred by not severing counts 5 and 6 from the other counts. Counts 1 through 4 focus on the robbery, whereas counts 5 and 6 involve Lang's conspiracy to travel to Venezuela to kill, kidnap, or maim persons and attempt to overthrow the Venezuelan government. Pre-trial, Lang moved under Federal Rules of Criminal Procedure 8(b) and 14(a) for the Court

to sever counts 5 and 6 because the evidence related to those counts—*i.e.*, Lang's history of combat in Ukraine and South Sudan and communications regarding his plan to fight in Venezuela—prejudiced him as to the first four counts involving the robbery. (Doc. 368). The Court denied that motion. (Doc. 403).

Post-trial, Lang raises the same argument. He claims the evidence of his prior combat excursions tarnished his self-defense theory because "[t]he jury undoubtedly relied on the evidence Mr. Lang was a trained soldier who fought in foreign theaters to conclude he was predisposed to commit a robbery-murder, rejecting self-defense." (Doc. 434 at 2). The Court is unconvinced.

To show the Court erred in denying the motion to sever, Lang must "make a showing of 'compelling prejudice' against which the district court offered no protection." *United States v. Feldman*, 936 F.3d 1288, 1297 (11th Cir. 2019) (citation omitted). A defendant shows compelling prejudice by demonstrating that the jurors could not "follow [the] court's limiting instructions and appraise the independent evidence against [the] defendant solely on that defendant's own acts, statements, and conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict." *United States v. Walser*, 3 F.3d 380, 386–87 (11th Cir. 1993). "This is a heavy burden, and one which mere conclusory allegations cannot carry." *Id.* at 386.

3

Lang offers nothing more than his conclusory assertion that the jury "undoubtedly" relied on the evidence pertaining to counts 5 and 6 to convict him on counts 1 through 4. He provides no argument suggesting that the jury could not make an individualized determination of guilt based on the evidence.[1] Indeed, the Court provided the jury with the Eleventh Circuit Pattern Jury Instruction as follows:

> Each count of the Superseding Indictment charges a separate crime. You must consider each crime and the evidence relating to it separately. If you find the Defendant guilty or not guilty of one crime, that must not affect your verdict for any other crime.

(Doc. 430 at 38).[2] "Absent evidence to the contrary, we presume that a jury was able to follow the district court's instructions and evaluate the evidence on each count independently." *United States v. Brooks*, 426 F. App'x 878, 883 (11th Cir. 2011). Lang fails to carry his heavy burden of demonstrating the jury failed to follow the Court's instructions.

---

[1] This lack of analysis or argument is a reoccurring theme throughout Lang's motion. His arguments are largely undeveloped, leaving the Court often guessing the precise basis for his arguments in support of a new trial. This is improper. *See United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023) (explaining a movant abandons a claim when "he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority"); *see also United States v. Fechete*, No. 06 CR 923-1, 2008 WL 4200286, at *1 (N.D. Ill. Sept. 10, 2008) (explaining that a movant under Rule 33 "bears the responsibility of developing his arguments and presenting the court with adequate grounds and authority to grant the relief requested" (cleaned up and citation omitted)).

[2] And, as discussed below, the Court instructed the jury as to the proper use of the evidence regarding Lang's combat activity in Ukraine and South Sudan.

Even assuming the jury did consider evidence of Lang's prior combat when convicting him on counts 1 through 4, this was not improper. The evidence for counts 5 and 6 explained the motive behind Lang's actions for the first four counts. Specifically, Lang's motive for the robbery was to obtain funds to travel to Venezuela. To understand the underlying motive for the robbery, the jury needed to appreciate Lang's motive for traveling to Venezuela—*i.e.*, to engage in combat. And Lang's prior combat experiences helped the Government establish such motive. In short, the evidence is inextricably intertwined. So even if the Court had severed counts 5 and 6, the Government could likely have admitted the evidence for counts 1 through 4 in a separate trial anyway. *See United States v. Fernandez*, 374 F. App'x 912, 920 (11th Cir. 2010) (affirming district courts denial of motion to sever a count because the government would have been able to admit the evidence either way). The Court thus overrules this ground for a new trial.

## II.  Rule 404(b) evidence

The entirety of Lang's Rule 404(b) argument goes: "Similarly, introduction of the rule 404(b) evidence was particularly prejudicial at trial." (Doc. 434 at 2). That's it. He makes no mention of what Rule 404(b) evidence he refers to or how its introduction was prejudicial.

Presumably, Lang is referencing introduction of evidence of his passport fraud, participation in combat-related activity in Ukraine, and attempt to

engage in combat in South Sudan. The Court addressed this same argument pre-trial and found such evidence admissible. (Doc. 397). With no argument as to how the introduction of such evidence was erroneously admitted or otherwise prejudicial, the Court sees no reason to depart from its prior ruling.

What's more, the Court provided a limiting instruction that stated, in pertinent part:

> During the trial, you heard evidence of acts allegedly done by the Defendant on other occasions that may be similar to acts the Defendant is charged with in the Superseding Indictment. You heard evidence of passport fraud. You also heard that the Defendant participated in combat-related activity in Ukraine against Russian-backed separatists, and that the Defendant intended and attempted to engage in combat in South Sudan with co-Defendant Alex Zwiefelhofer. Although this evidence has been admitted, you must not consider any of it to decide whether the Defendant committed the acts charged.

(Doc. 430 at 7–8).[3] The limiting instruction alleviated any potential prejudice, and Lang offers no argument otherwise. *See United States v. Hood*, No. 21-13903, 2025 WL 1454356, at *5 (11th Cir. May 21, 2025) (citing *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005)) ("The risk of undue prejudice can be reduced by an appropriate limiting instruction."). So this argument for a new trial also falls flat.

---

[3] Lang did not object to the instruction in its final form. And when the Government introduced the passport-fraud evidence, the Court (out of an abundance of caution) also read a limiting instruction at that time.

6

### III. Denial of cross-examination as to S.L.'s mental health history

Next, Lang objects to the Court's refusal to allow cross-examination of S.L.'s mental health history. During its case-in-chief, the Government called S.L.'s sister, Rosita Doucet. Prior to her testimony, Lang (outside the jury's presence) explained to the Court that Doucet would likely testify that S.L. was a disabled veteran. Given this anticipated testimony, Lang argued it would be misleading to refer to S.L. as a "disabled veteran" without additional context of such disability. Specifically, Lang claimed that Doucet stated in an interview with officers that S.L. suffered from post-traumatic stress disorder ("PTSD"), had been Baker Acted, and reacted poorly around firearms. Lang sought to elicit testimony from Doucet on cross-examination about S.L.'s mental-health issues.

When Doucet took the stand, she began her testimony by offering some brief background that Lang characterizes as "sympathy" testimony. For instance, she mentioned S.L. wore reading glasses and was a military veteran.[4] But she never mentioned S.L. being a "disabled" veteran or referenced his mental disability.

---

[4] Lang's motion does not identify what testimony he believes was "sympathetic." But the Court assumes he references the foregoing testimony given his pre-trial motion to exclude victim sympathy identified that evidence. (Doc. 372). The Court denied the pre-trial motion, finding that such evidence was relevant background and identification information. (Doc. 392).

7

Before his cross-examination, Lang renewed his request to cross-examine Doucet about S.L.'s PTSD, Baker Act detention, and issues around guns. But given Doucet made no mention of S.L.'s disability, Lang's basis for introducing such evidence was moot. So the Court sustained the Government's objection, noting that Lang could not introduce such evidence at that time. Lang never sought to introduce evidence of S.L.'s mental health issues by any other means or during his case-in-chief.

Now, Lang tries a different approach. Abandoning his original position that the evidence was necessary to avoid misleading the jury regarding S.L.'s status as a "disabled veteran," he now maintains the evidence would have countered the victim sympathy testimony offered by Doucet—*i.e.*, that S.L. was a veteran who wore reading glasses. (Doc. 434 at 2). This argument fails.

Even assuming Lang can raise a new argument for the admission of evidence in a Rule 33 motion after his argument at trial failed, he fails to show that his inability to rebut evidence that S.L. was a glasses-wearing veteran was prejudicial. And even if it was prejudicial, the Court fails to see how S.L.'s mental-health issues would alleviate the purported sympathy, and Lang does not bother to explain. So the Court rejects this basis for a new trial as well.

## IV. Denial of cross-examination on an exculpatory statement made by Lang

During trial, Government witnesses Alex Kalemba and Matthew McCloud testified as to Lang's incriminating statements. These statements were admissible non-hearsay under Federal Rule of Evidence 801(d)(2), as they were an opposing party's statements offered against the opposing party. On cross-examination of David Kleman (another Government witness), Lang sought to introduce his own exculpatory statements. Specifically, Kleman would have testified that Lang told him (Kleman) that D.L. shot at Lang first during the firearm transaction. This testimony would support Lang's self-defense theory. The Court sustained the Government's objection to such testimony, finding that the statement would constitute inadmissible hearsay. Lang argues this was error.

Authority on this issue is clear. A "defendant may not introduce his own exculpatory statement through another witness without subjecting himself to cross-examination." *United States v. Vernon*, 593 F. App'x 883, 890 (11th Cir. 2014) (citing *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999)); *see also United States v. Alli*, No. 8:23-CR-24-CEH-SPF, 2024 WL 1051018, at *1 (M.D. Fla. Mar. 11, 2024) (citing *United States v. Willis,* 759 F.2d 1486 (11th Cir. 1985)) ("Furthermore, under the Federal Rules of Evidence, a defendant cannot elicit the defendant's own exculpatory hearsay

9

statements through cross-examination."). Trying to introduce a defendant's exculpatory remarks without subjecting himself to cross-examination "is precisely what is forbidden by the hearsay rule." *Willis*, 759 F.2d at 1501; *cf. United States v. Maynor*, No. CR418-167, 2019 WL 5549864, at *1 (S.D. Ga. Oct. 25, 2019) ("If Defendant, without subjecting himself to cross-examination, seeks to introduce his out-of-court statements to prove that he had no knowledge of the firearm or did not possess it, then the statements go to the truth of the matter asserted and those statements constitute hearsay.").

At the time Lang cross-examined Kleman, Lang had not yet taken the stand and been subjected to cross-examination. So his attempt to introduce his own exculpatory statement through cross-examination of Kleman constituted inadmissible hearsay.

That's not all. After Lang testified that he acted in self-defense, and the Government cross-examined him and challenged his testimony, Lang could have called Kleman and introduced Lang's exculpatory statements as a prior consistent statement. *See* Fed. R. Civ. P. 801(d)(1)(b). But when the Court asked if Lang intended to re-call Kleman, he declined to do so. So his fourth ground for a new trial also fails.

## V. Denial of a jury instruction and related discovery on count 6

Lang does not provide any argument on this ground. He simply states that "the Court declined to permit discovery on covert operations in Venezuela,

10

as well as the related jury instruction." (Doc. 434 at 4). The Court is aware of its rulings. But Lang fails to articulate how the ruling was erroneous. And the Court already ruled on this issue pre-trial. (Doc. 402). With nothing more from Lang, the Court finds no reason to revisit its ruling.

## VI. Insufficient evidence

"A motion for a new trial based on the weight of the evidence is not favored and is reserved for really exceptional cases." *United States v. Moore*, 76 F.4th 1355, 1363 (11th Cir. 2023) (citation omitted). Despite this hefty burden, here is the entirety of Lang's argument on this point: "The evidence was insufficient on all counts as previously argued." (Doc. 434 at 4) (citation omitted). This conclusory argument is inadequate.

After presiding over the trial, the Court found that taking the evidence as a whole, any rational juror could find Lang was guilty beyond a reasonable doubt as to every element of every count in the Superseding Indictment. With no new argument, there is no reason for a new ruling. Therefore, Lang's final argument for a new trial is overruled, and the Court denies his motion.

Accordingly, it is now

**ORDERED:**

11

Defendant Craig Austin Lang's Motion for New Trial (Doc. 434) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on December 8, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

12